IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TANISHA JONES,                          :
                                        :
          Plaintiff,                    :
                                        :  CIVIL ACTION NO.
          v.                            :  1:11-CV-2330-TWT-CCH
                                        :
VERICREST FINANCIAL, INC., et al.,      :
                                        :
          Defendants.                   :

## O R D E R

Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within fourteen (14) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the District Court and

any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

IT IS SO ORDERED this 7th day of December, 2011.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TANISHA JONES, | : | CIVIL ACTION NO. |
| | : | 1:11-CV-2330-TWT-CCH |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VERICREST FINANCIAL, INC., et al., | : | **FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff Tanisha Jones, acting through counsel, filed this action on July 15, 2011, asserting multiple claims against Defendants Vericrest Financial, Inc., Flagstar Bank FSB, LSF7 NPL V Trust, and Home America Mortgage, Inc. Plaintiff asserted claims against all Defendants under the Truth in Lending Act ("TILA"), 14 U.S.C. §§ 1601 *et seq.*, including 12 C.F.R. §§ 226.1 *et seq.* ("Regulation Z"), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2600 *et seq.*, as well as a claim under O.C.G.A. § 7-1-1013, the Georgia Residential Mortgage Act ("GRMA"). On August 29, 2011, the Plaintiff filed a First Amended Complaint [11] in which she re-asserted the claims set forth in the original Complaint and also added a claim of fraudulent concealment against all Defendants.[1]

---

[1] Two days after filing the First Amended Complaint, Plaintiff filed a second document also titled "First Amended Complaint." *See* "First Amended Complaint" [14]. Because the Plaintiff failed to seek leave of Court before filing the second "First Amended Complaint," the undersigned recommends that it be stricken

The action is before the Court on the Motion to Dismiss [3] and Motion to Dismiss Plaintiff's Amended Complaint [18] filed by Defendants LSF7 NPL V Trust and Vericrest Financial, Inc., and the Motion to Dismiss [6] and Motion to Dismiss First Amended Complaint [19] filed by Defendant Flagstar Bank FSB.

For the reasons discussed below, **IT IS RECOMMENDED** that the Motion to Dismiss [3] and the Motion to Dismiss Plaintiff's Amended Complaint [18] filed by Defendants LSF7 NPL V Trust and Vericrest Financial, Inc. be **GRANTED**, and the Motion to Dismiss [6] and Motion to Dismiss First Amended Complaint [19] filed by Defendant Flagstar Bank FSB, be **GRANTED**, and that all of the claims asserted against Defendants Vericrest, the Trust, and Flagstar in the original Complaint and the First Amended Complaint be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that the second "First Amended Complaint" [14] filed by the Plaintiff on August 31, 2011, be **STRICKEN** from the record.

**IT IS FURTHER RECOMMENDED** that all of the claims asserted against Defendant Home America Mortgage, Inc. be **DISMISSED without prejudice**. In the

---

from the record. *See* discussion *infra*.

event that the District Court adopts all of these recommendations, this action should be **DISMISSED** in its entirety against all Defendants.

## I.     BACKGROUND

In the Complaint [1] filed on July 15, 2011, Plaintiff alleges that she is a resident of Fulton County, Georgia, and has been for more than six months prior to the date of filing the Complaint. Compl. [1] at ¶ 1. Plaintiff further alleges that Defendant Vericrest Financial, Inc. ("Vericrest") is a Delaware corporation with its principal place of business located in Oklahoma City, Oklahoma; Defendant Flagstar Bank FSB ("Flagstar") is a federally chartered savings bank with its corporate office located in Troy, Michigan; Defendant LSF7 NPL V Trust ("Trust") is a trust with its principal place of business located in Oklahoma City, Oklahoma, and Defendant Home America Mortgage, Inc. ("Home America") is a Florida corporation with its principal place of business located in Lawrenceville, Georgia. *Id.* at ¶¶ 2-5.

Plaintiff alleges that, on or about March 17, 2005, she refinanced a mortgage loan with Home America in the amount of $431,000.00 (the "Loan") for property located at 285 Centennial Olympic Drive, PH 104, Atlanta, Georgia 30313 (the "Property"). *Id.* at ¶ 12. She alleges that, during the closing of the Loan, Home

America provided her with a copy of the Settlement documents, including the Truth in Lending Disclosure Statement and Good Faith Estimate. *Id.* at ¶ 12, Ex. A and B. According to Plaintiff, the servicing rights for the Loan were transferred to Flagstar effective May 1, 2005. *Id.* at ¶ 13, Ex. C.

Plaintiff alleges that, on or about September 11, 2010, over five years after the closing of the Loan, she sent a qualified written request ("QWR") to Flagstar requesting clarification of various charges, credits, debits, and actions that she believed were in error. *Id.* at ¶ 17, Ex. G. In that purported QWR, Plaintiff wrote:

> I understand that under SECTION 6 of RESPA you are required to acknowledge my request within 20 business days and must try to resolve the issue within 60 business days. Please treat this letter as a "qualified written request" under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).
>
> I am writing to complain about the accounting and servicing of my mortgage and my need for understanding and clarification of various charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of my loan from its origination to the present date. To date, the documents and information I have, that you have sent me, and the conversations with your service representatives cannot answer my many questions.
>
> It is my understanding that your mortgage servicing company has ben accused as engaging in one or more predatory lending and servicing schemes. As a citizen, I am extremely concerned about such practices by anyone, let alone my own mortgage company or anyone who has held a beneficial interest in my loan. I am concerned that such abuses are

targeting the uneducated and uninformed consumer and disadvantaged, poor, elderly and minorities.

Needless to say, I am more concerned as an alleged borrower. I am worried that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have negatively affected my credit rating, mortgage account and/or the debt or payments to which I am legally obligated.

Because of this and other reasons that leave me to believe that I may be a victim of predatory lending, I am disputing the validity of the current debt you claim I owe. By debt I am referring to:

1. The principal balance claimed owed;

2. My calculated escrow payment,

3. Calculated monthly payment

4. And any fees claimed to be owed by you or any trust or entity you may represent.

I have reason to believe that the loan terms were misrepresented to me at the time of application and further obscured and/or modified prior to signing. I believe that my income may have been inflated on the application. I also have reason to believe that certain statements were not provided for my approval prior to closing, and that signatures may have been forged on various documents. It is also my belief that certain documents may not have been presented at all. Additionally, I believe that a notary was not physically present to witness my signatures on several pertinent documents and that I was ill advised at the time of closing.

To independently validate my debt, I need to conduct a complete exam, audit, review and accounting of my mortgage loan from its inception through the present date. Upon receipt of this letter, please refrain from reporting ANY negative credit information [if any] to any credit-reporting agency until you respond to each of my requests.

I also request that you kindly conduct your own investigation and audit of my account since its inception to validate the debt you currently claim I owe. I would like you to validate this debt so that it is accurate to the penny! . . .

In order to conduct the examination and audit of my loan, I need to have full and immediate disclosure including copies of all pertinent information regarding my loan. The documents requested and answers to my questions are needed by me and my experts to insure that my loan:

1. Was originated in lawful compliance with all federal and state laws and regulations including, but not limited to RESPA, TILA, FAIR DEBT COLLECTION ACT, HOEPA and other laws;

2. That any sale or transfer of my loan was conducted in accordance with proper laws and was a true sale of my note;

3. That the claimed holder in due course of my promissory note or other document that secures payment by me to my obligation in this account from the inception of my loan to the present date including any such assignments on MERS.

4. All records, electronic or otherwise, of assignments of my mortgage, promissory note or servicing rights to my mortgage including any such assignments on MERS.

5. All deeds in lieu, modifications to my mortgage, promissory note or deed of trust from the inception of my loan to the present date.

6. The front and back of each and every cancelled check, money order, draft, debit or credit notice issued to any servicer of my account for payment of any monthly payment, other payment, escrow charge, fee or expense on my account.

7. All escrow analyses conducted on my account from the inception of my loan until the date of this letter.

8. The front and back of each and every canceled check, draft or debit notice issued for payment of closing cost, fees and expenses listed on my disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees,

credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

9. Front and back copies of all payment receipts, checks, money orders, drafts. Automatic debits and written evidence of payments made by others or me on my account.

10. All letters, statements and documents sent to me by your company.

11. All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

12. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, attorney or other representative of your company.

13. All letters, statements and documents contained in my loan file or imaged by you, any servicer or sub-servicers of my mortgage from the inception of my loan to present date.

14. All electronic transfers, assignments, sales of my note, mortgage, deed of trust or other security instrument.

15. All copies of property inspection reports, appraisals, BPOs and reports, done on my property.

16. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to my mortgage account from the inception of my loan to the present date.

17. All checks used to pay invoices for each charged [sic] such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

18. All agreements, contracts and understandings with vendors that have been paid for any charge on my account from the inception of my loan to the present date.

19. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of my loan from the inception of my loan until present date.

20. All loan servicing transaction records, ledges, registers and similar items detailing how my loan has been serviced from the inception of my loan until present.

Please provide me, with the documents I have requested and a detailed answer to each of my questions within the required lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional QWR letter. . . .

*Id.*, Ex. G. Although the QWR is dated September 11, 2010, it indicates on its face that it was signed and notarized on September 13, 2010. *Id.*, Ex. G.

Plaintiff further alleges that, on or about October 5, 2010, Flagstar sent a letter to her purporting to respond to the QWR, but she contends it failed to clarify or explain any of the errors described in the QWR. *Id.* at ¶ 18, Ex. H ("QWR Response"). In the QWR Response that Flagstar sent to Plaintiff it wrote:

We are responding to your recent correspondence in which you indicated you were making a "Qualified Written Request" ("QWR"). Please note the majority of your inquiry does not meet the criteria of a QWR as outlined in 12 U.S.C. 2605(e) and 24 CFR 3500.21(e), which states that

a qualified written request involves questions about the servicing of a mortgage loan. Much of the documentation requested and issues raised in your letter far exceed a request for servicing information. Without the benefit of a discovery order, we are unwilling to respond to the remaining extensive list of questions contained in your recent letter.

With regard to the servicing of the loan we have enclosed the following documents:

1. Mortgage
2. Note
3. Payment History

*Id.*, Ex. H.

Plaintiff alleges that, on November 30, 2010, Flagstar notified her that the servicing of the Loan would be transferred to Vericrest, and that, as of the date she filed the Complaint, the Loan was being serviced by Vericrest. *Id.* at ¶ 16. She also alleges that Home America recorded a Security Deed on the Property on May 23, 2005, in the Fulton County records, and that the Security Deed was later transferred to the Trust and recorded on May 5, 2011. *Id.* at ¶¶ 14, 15.

Plaintiff alleges that, in January of 2011, a post-closing Loan Audit Analysis was conducted and that it revealed numerous violations of TILA. *Id.* at ¶ 20, Ex. I. She contends that, on or about March 3, 2011, she made a demand on Vericrest advising it of the various TILA violations and requesting a reduction in her mortgage payment.

*Id.* at ¶ 21, Ex. J ("First Demand Letter"). In the First Demand Letter, Plaintiff's counsel wrote to Vericrest:

> Please be advised that this law firm has been retained by Tanisha Jones regarding real property located at 285 Centennial Olympic Park Dr. PH 104, Atlanta, GA 30313.
>
> Based on our analysis of a Post-Closing Loan Audit Analysis ("Audit"), conducted from our client's original loan documents, we have discovered a number of deficiencies . . .
>
> 1. This loan failed to accurately disclose the Amount Financed. . . .
>
> 2. This loan failed to accurately disclose the Total of payments. . . .
>
> As you are well aware, material Truth in Lending violations invoke Ms. Jones' right to rescind her loan. Ms. Joans could not have reasonably discovered the concealed fact of TILA violations in depth and explicitly until February 14, 2011, when she reviewed the results of her attached Post Closing Loan Audit Analysis. . . .
>
> Therefore, in exchange for your cooperation in (1) reducing Ms. Jones' monthly mortgage payment to $1,571.70 (which is simply the Making Home Affordable Program's guideline for 31% of Ms. Jones' monthly income); and (2) assuring that Vericrest would still maintain the mortgage of this home, even at its reduced amount, Ms. Jones would forgo taking any and all legal action against you regarding this matter.
>
> You will have twenty (20) days from your receipt of this letter to accept the abovementioned requests or respond with a counter-offer. In the event that Ms. Jones does not hear from you within such twenty (20) day period, she will be forced to take that inaction as your unwillingness to settle this matter, and, accordingly, move forward with the filing of a complaint and service of process. . . .

*Id.*, Ex. J.

Plaintiff alleges that, on or about March 28, 2011, Vericrest responded to her and declared her contentions to be meritless. *Id.* at ¶ 22, Ex. K ("First Response Letter") ("We have analyzed the arguments contained therein, and find them to be without merit."). She further alleges that, on or about March 30, 2011, she responded to Vericrest and stated that she sought to proceed with a rescission of the Loan, if a loan work-out and settlement was not possible. *Id.* at ¶ 23, Ex. L ("Second Demand Letter"). In the Second Demand Letter, Plaintiff's counsel wrote to Vericrest:

> It was only after Vericrest became unwilling to work with Ms. Jones on an equitable solution that our client engaged my firm to send a demand letter detailing a suggested settlement of her claim. . . .
>
> Please provide clarification as to how the arguments contained in our original demand letter were without merit. Please provide us with specifics regarding your position. At this point, Ms. Jones' last option is to simply rescind her loan based on the violations detailed in our original letter but, she would like to avoid doing so if at all possible.

*Id.*, Ex. H.

Plaintiff alleges that Vericrest responded to her Second Demand Letter on or about May 10, 2011, in which it failed to explain the TILA violations and advised Plaintiff of a pending foreclosure proceeding on the Property. *Id.* at ¶ 24, Ex. M ("Second Response Letter"). In the Second Response Letter, Vericrest wrote to Plaintiff's counsel:

Our records indicate we began servicing this loan December 16, 2010. Since we began servicing the loan we have not received any payments. We received documentation from Ms. Jones requesting a loan modification. Based on the financial documentation she supplied we are unable to approve a loan modification due to the debt to income ratio. If her financial situation has changed we would encourage her to supply the updated financial documentation to our Loss Mitigation Department for your review.

Currently Ms. Jones remains due for the February 1, 2010 and subsequent payments. Her account has a foreclosure sale date of June 7, 2011. Ms. Jones should contact our Foreclosure department [] for options on preventing the foreclosure, including a forbearance agreement, short sale or deed in lieu.

*Id.*, Ex. M.

Plaintiff alleges that the Property was later scheduled for a foreclosure sale on August 2, 2011. *Id.* at ¶ 26. Approximately two weeks before the foreclosure sale of the Property was scheduled to take place, Plaintiff filed the Complaint initiating this action on July 15, 2011, asserting six counts against all Defendants:[2] two counts under TILA and Regulation Z (Counts I and II), two separate counts under RESPA (Counts III and IV), one count for a violation of O.C.G.A. § 7-1-1013 (Count V), and a non-

---

[2] In the Complaint, Plaintiff names only Defendants Home America and Flagstar in Counts I-III. *See* Compl. [1] at 8-12. In Plaintiff's Response to the Motion to Dismiss filed by Vericrest and the Trust, however, Plaintiff contends that they are also responsible for the TILA violations as assignees of the Loan. *See* Pl. Br. [12] at 7. Accordingly, unless otherwise noted, the undersigned will assume for the purpose of this discussion that Plaintiff intended to assert all claims against all Defendants.

substantive count in which she requests attorney's fees under O.C.G.A. § 13-6-11 (Count VI).

Thereafter, on August 8, 2011, Vericrest and the Trust filed a Motion to Dismiss [3] in which they argued that all of the Plaintiff's claims asserted against them must be dismissed for failure to state a claim. On August 19, 2011, Flagstar followed by filing its own Motion to Dismiss [6], also arguing that the Plaintiff's claims asserted against it must be dismissed for failure to state a claim. Plaintiff filed a response to the Motion to Dismiss filed by Vericrest and the Trust [12] on August 29, 2011, and filed a response to Flagstar's Motion to Dismiss [16] on September 2, 2011.

In addition, on the same day that Plaintiff filed her response to the Motion to Dismiss filed by Vericrest and the Trust, August 29, 2011, Plaintiff also filed a "First Amended Complaint" [11] in which she incorporates by reference the factual allegations and counts set forth in the original Complaint, including exhibits. *See* First. Am. Compl. [11] at 1. Plaintiff states that she "sets forth only the following factual allegations and cause of action to be added by this Amendment:" *Id.* Thereafter, Plaintiff includes two factual allegations numbered "12" and "12(a)." *Id.* Plaintiff does not state that she intends for those two factual allegations to replace or substitute for any factual allegations set forth in the original Complaint; instead, she specifically

incorporates by reference all the factual allegations in the original Complaint and merely seeks to have the new factual allegations "added" by the Amendment. *See id.*

In the new factual allegations set forth in the First Amended Complaint, Plaintiff alleges that, on or about March 17, 2005, she refinanced the Loan with Home America in the amount of $431,000.00 for the Property. *Id.* at ¶ 12. She further alleges that, during the closing, Home America failed to provide Plaintiff with a copy of the settlement documents, including, but not limited to, the Truth in Lending Disclosure Statement and Good Faith Estimate. *Id.* She contends that, after she made repeated requests for the settlement documents, the documents were finally provided to her on or about August 15, 2010. *Id.* Significantly, this allegation contradicts the allegation the Plaintiff makes in the original Complaint in which she alleges that, during the closing of the Loan, Home America provided her with a copy of the Settlement documents, including the Truth in Lending Disclosure Statement and Good Faith Estimate. Compl. [1] at ¶ 12, Ex. A and B.

Plaintiff further alleges in the First Amended Complaint that Home America's agent, Morris Hardwick and Schneider LLC, had another closing scheduled to take place immediately after the conclusion of the Plaintiff's closing, and that during Plaintiff's closing, "Defendant pressured Plaintiff to hurry through each of the flagged

documents without sufficient time to examine the documents she subsequently endorsed." First Amend. Comp. [11] at ¶ 12(a).

In addition to adding new factual allegations, Plaintiff also asserts seven counts against Defendants in the First Amended Complaint, numbered I, II, III, IV, VI, VII, VIII, and VIII [sic]. *See id.* at 2-9. In the First Amended Complaint, Plaintiff asserts four counts under TILA and Regulation Z (Counts I, II, VIII, and the second VIII), two counts under RESPA (Counts III and IV), and one count for fraudulent concealment (Count VII). *Id.* at 2-9. Plaintiff does not assert any count under O.C.G.A. § 7-1-1013, nor does she assert a separate count requesting attorney's fees, as she does in the original Complaint.

In the First Amended Complaint, Plaintiff also alleges, in connection with her two counts under RESPA (Counts III and IV), that she has incurred actual damages in an amount in excess of $180,000, which represents all of Plaintiff's payments to Defendants as a result of the real estate transaction including, but not limited to, mortgage payments, finance charges, property taxes, condominium fees, and property insurance payments. *Id.* at ¶¶ 39, 45.

Two days after filing the First Amended Complaint, Plaintiff filed another document titled "First Amended Complaint" on August 31, 2011. *See* "First Amended Complaint" [14]. Plaintiff did not seek leave of Court before filing the second "First Amended Complaint." Although Plaintiff does not explain the purpose of filing the second "First Amended Complaint," it appears that the second "First Amended Complaint" is virtually identical to the first "First Amended Complaint," except that the second version attaches an Exhibit N that is a document titled "Mortgage Loan Compliance Rapid Report." *See* "First Amended Complaint," Ex. N.

After Plaintiff filed the two versions of the "First Amended Complaint," Defendants Trust and Vericrest filed a Motion to Dismiss Plaintiff's Amended Complaint [18] on September 8, 2011, and Defendant Flagstar again followed by filing its own Motion to Dismiss First Amended Complaint [19] on September 9, 2011. As of this date, Plaintiff has failed to file any response to either of those Motions to Dismiss the First Amended Complaint. Under the Local Rules of this Court, a failure to file a response to a motion indicates that the motion is unopposed. *See* LR 7.1(B), NDGa.

## II. DISCUSSION

### A. Plaintiff's "First Amended Complaint"

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendments of pleadings before trial. Rule 15(a) states that a party "may amend its pleading once as a matter of course" within 21 days after serving the pleading, or, if the pleading is one in which a responsive pleading is required, within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Eleventh Circuit has elaborated on the meaning of the phrase "when justice so requires," summarizing the rule as follows:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

*Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision whether to grant leave to amend is within the sound discretion of the trial court, but, in denying leave to amend, the court should state a specific reason justifying denial. *Foman*, 371 U.S. at 182 (1962); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993); *see also Smith v. Duff & Phelps, Inc.*, 5 F.3d 488, 493 (11th Cir. 1993); *Hester v. International Union of Operating Engineers*, AFL-CIO, 941 F.2d 1574, 1578 (11th Cir. 1991).

In this case, the Plaintiff filed the first "First Amended Complaint" on August 29, 2011. The docket indicates that Defendants Vericrest and Trust filed their first Motion to Dismiss on August 8, 2011, and served Plaintiff electronically on that day via the Court's automated system. Thus, under Rule 15, the Plaintiff had 21 days after service of that motion, or until August 29, 2011, in which to amend her Complaint once as a matter of course. Because Plaintiff filed the first "First Amended Complaint" on that day, the Plaintiff was permitted under Rule 15 to file it without seeking leave of Court or obtaining the consent of the opposing parties.

Two days later, on August 31, 2011, Plaintiff filed the second "First Amended Complaint." "First Amended Complaint" [14]. Even if that second amendment were timely filed, under Rule 15 a party may amend its pleading only "*once* as a matter of

18

course" without seeking leave of Court or the written consent of the adverse party. Fed. R. Civ. P. 15(a)(1) (emphasis added). Thus, Plaintiff was required to obtain leave of Court or the written consent of the opposing party before filing that second version of the "First Amended Complaint." Plaintiff did neither. Accordingly, because the Plaintiff failed to seek leave of Court before filing the second "First Amended Complaint," the undersigned **RECOMMENDS** that the second "First Amended Complaint" [14] be **STRICKEN** from the record. For the purpose of this discussion, all references herein to the Plaintiff's "First Amended Complaint" shall refer to the first version filed on August 29, 2011 [11].[3]

Because the Plaintiff filed the first "First Amended Complaint" within the time period allowed under Rule 15, ordinarily that amended pleading would render moot the Motions to Dismiss [3][6] filed by the Defendants, because those motions applied only to the claims asserted in the original Complaint. In this case, however, the Plaintiff did not state that she intended the First Amended Complaint to substitute for the original Complaint; instead, she expressly states that she incorporates by reference all the factual allegations and claims contained in the original Complaint. *See* First

---

[3] Because the allegations in the second "First Amended Complaint" appear to be virtually identical to those contained in the first "First Amended Complaint," the discussion herein regarding the Defendants' Motions to Dismiss the First Amended Complaint would apply equally to either version of the "First Amended Complaint."

Amend. Compl. [11] at 1. Thus, the First Amended Complaint does not render the Motions to Dismiss moot, because the Plaintiff seeks to pursue all the claims she asserted in the original Complaint along with the additional claim set forth only in the First Amended Complaint.

Confusingly, the Plaintiff then goes on to assert factual allegations in the First Amended Complaint that directly contradict the factual allegations set forth in the original Complaint. She also asserts multiple counts that duplicate some of the counts asserted in the original Complaint, along with adding a single new count that does not appear in the original Complaint, and failing to assert two counts that appear in the original Complaint. In order to sort out the Plaintiff's claims contained in both the original Complaint and the First Amended Complaint, the Court infers that, despite Plaintiff's statement in the First Amended Complaint that she incorporates by reference all the factual allegations and claims asserted in the original Complaint, her actual intent in filing the First Amended Complaint was to substitute those counts that duplicate the counts set forth in the original Complaint with the same corresponding number. Accordingly, combining the claims asserted in both the original Complaint and the First Amended Complaint, the undersigned assumes for the purpose of this discussion that Plaintiff intends to assert four counts under TILA and Regulation Z

(Counts I, II, VIII, and the second VIII), two counts under RESPA (Counts III and IV), one count for a violation of O.C.G.A. § 7-1-1013 (Count V), a non-substantive count in which she requests attorney's fees under O.C.G.A. § 13-6-11 (Count VI), and one count for fraudulent concealment (Count VII). Defendants Vericrest, Trust, and Flagstar have moved to dismiss all of the claims asserted against them in both the original Complaint and the First Amended Complaint.

### B. Standard on a Motion to Dismiss

Defendants have moved to dismiss all the claims asserted against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

The *Iqbal* Court went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), when a plaintiff has referred to documents in the complaint and such documents are central to the Plaintiff's claims, the Court may consider those documents as part of the pleadings in this case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the

plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

In this case, Plaintiff has attached several documents to the Complaint that are central to her claims, including the Truth in Lending Disclosure Statement; the Good Faith Estimate; the Security Deed; the alleged QWR she sent to Flagstar on or about September 11, 2010; the QWR response Flagstar sent to her on or about October 5, 2010; the First Demand Letter she sent to Vericrest on or about March 3, 2011; the First Response Letter Vericrest sent to her on or about March 28, 2011; the Second Demand Letter she sent to Vericrest on or about March 30, 2011, and the Second Response Letter Vericrest sent to her on or about May 10, 2011. Because the Plaintiff has referred to those documents in the Complaint and has attached them to the Complaint, the Court may consider them in resolving the Defendants' Motions to Dismiss.

C.   Plaintiff's Claims

1.   TILA and Regulation Z

In Counts I, II, VIII, and a second VIII, Plaintiff has asserted four separate counts against all the Defendants under TILA and Regulation Z.[4] Defendants argue that the factual allegations set forth in the Complaint and the First Amended Complaint establish that the Plaintiff's claims under TILA and Regulation Z are barred by the statute of limitations, and further, that Plaintiff has otherwise failed to state a claim for relief against them under TILA and Regulation Z.

A debtor must bring a claim for statutory damages under TILA within one year of the date of the occurrence of the violation. 15 U.S.C. § 1640(e). For the purposes of TILA, a violation occurs when the transaction is consummated. *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984) (citing *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973)). Nondisclosure is not a continuing violation for purposes of the statute of limitations. *Id.* In addition, pursuant to Regulation Z, a debtor has the right to rescind certain loan transactions governed by TILA for up to three years if the lender fails to

---

[4] The Board of Governors of the Federal Reserve System issued Regulation Z to implement TILA and other statutes. 12 C.F.R. § 226.1(a). Thus, the Plaintiff's claims asserted under Regulation Z are asserted generally under TILA.

provide certain material disclosures. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The law is clear, however, that any right of rescission is extinguished after three years, such that no right to rescind can be raised beyond the three-year limitations period. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998).

Plaintiff alleges in the Complaint that she obtained the Loan from Home America on or about March 17, 2005, to refinance her mortgage on the Property. Compl. at ¶ 12. Defendants argue that the Plaintiff had one year after the closing, or until March 17, 2006, in which to file any claim for statutory damages under TILA, and three years, or until March 17, 2008, in which to seek rescission of the Loan. Plaintiff, however, did not file the Complaint initiating this action until July 15, 2011, well over six years after the closing of the Loan.

In response to Defendants' arguments that her TILA claims are barred by the statute of limitations, Plaintiff argues that Home America refused to provide her with the settlement documents at the time of the closing, and thus it engaged in fraudulent concealment that should result in equitable tolling of the statute of limitations of her TILA claims against all Defendants. In the original Complaint, Plaintiff alleges that, during the closing of the Loan, Home America provided her with a copy of the Settlement documents, including the Truth in Lending Disclosure Statement and Good

Faith Estimate. *Id.* at ¶ 12, Ex. A and B. Plaintiff further alleges that, in January of 2011, a post-closing Loan Audit Analysis was conducted and that it revealed numerous violations of TILA. *Id.* at ¶ 20, Ex. I.

In the First Amended Complaint, however, which expressly incorporates all the factual allegations of the original Complaint, Plaintiff alleges that Home America failed to provide her with a copy of the settlement documents at closing. First Amend. Compl. [11] at ¶ 12. She contends that she made repeated requests for the settlement documents, but that the documents were not provided to her until August 15, 2010. *Id.* She further alleges in the First Amended Complaint that Home America's agent, Morris Hardwick and Schneider LLC, had another closing scheduled to take place immediately after the conclusion of her closing, and that during her closing, "Defendant pressured Plaintiff to hurry through each of the flagged documents without sufficient time to examine the documents she subsequently endorsed." *Id.* at ¶ 12(a).

Thus, the Plaintiff makes contradictory allegations regarding the closing documents. She alleges both that Home America provided her with all the settlement documents at the time of the closing on March 17, 2005, and also that it failed to provide her with any settlement documents until over five years after the closing, on

August 15, 2010. Furthermore, she admits that she signed numerous documents at the closing indicating that she had received all the required disclosures, but she blames Home America because its agents "pressured" her to hurry through signing documents without adequately reviewing them. The undersigned finds that, even if the Plaintiff could establish that Home America refused to provide her with the settlement documents until August 15, 2010, she cannot establish that Home America engaged in "fraudulent concealment" that would be sufficient to result in equitable tolling of the statute of limitations based solely on its alleged nondisclosure of documents.

While the Eleventh Circuit has held that the TILA statute of limitations may be subject to equitable tolling, the doctrine is applied only in extraordinary circumstances. *See Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 702, 708 (11th Cir. 1998) (finding tolling may apply to TILA statute of limitations); *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (limiting the application of tolling to exceptional circumstances). In order to establish that equitable tolling would be justified, a plaintiff is required to demonstrate that the TILA violations were the product of "deliberate concealment" which she had "no reasonable means of discovering" prior to the end of the statute of limitations period. *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1154-55 (11th Cir. 2005).

In this case, Plaintiff's only allegation supporting her allegation of "fraudulent concealment" is that Home America "pressured" her to sign documents quickly without reviewing them and failed to provide her with copies of the settlement documents at the closing. In the Eleventh Circuit, the nondisclosure of documents is insufficient to establish equitable tolling of the statute of limitations. *See In re Smith*, 737 F. 2d 1549, 1552 (11th Cir. 1984); *see also Sampson v. Washington Mut. Bank*, No. 11-11400, 2011 WL 4584780 (11th Cir. Oct 05, 2011) (unpublished); *Frazile v. EMC Mortgage Corp.*, 382 Fed. Appx. 833 (11th Cir. 2010) (unpublished). Regardless of whether Plaintiff was given copies of the closing documents at the time of closing, Plaintiff's allegations demonstrate that, at the time of the closing, she was aware if she had the closing documents in her possession or not. Indeed, in the First Amended Complaint, Plaintiff alleges that she made "repeated requests" for the documents, thus conceding that she was aware that she had not been given all the required documents at the time of closing.

Furthermore, even if Home America failed to provide her with the settlement documents, the Eleventh Circuit has held that nondisclosure of documents cannot justify equitable tolling of the statute of limitations for a TILA claim because the

nondisclosure itself is a violation of TILA. *In re Smith*, 737 F.2d at 1552; *see also Sampson*, 2011 WL 4584780.

> Sampson alleges no inequitable circumstances outside of the fact that the defendants did not disclose the documents that are required under TILA. By definition, nondisclosure happens every time there is a TILA nondisclosure violation, and mere violation of the statute cannot serve as extraordinary circumstances that merit tolling. Because "nondisclosure is not a continuing violation for purposes of the statute of limitations" and does not by itself toll the running of the limitations period, Sampson's TILA claims are time-barred, *see In re Smith*, 737 F.2d at 1552, and the district court did not err in dismissing them.

*Sampson*, 2011 WL 4584780 at *2; *see also Frazile*, 382 Fed. Appx. at 838 n.2 ("Frazile's equitable tolling arguments fail. . . . Frazile knew in 2006, at the time of closing, that she had not been supplied with the documents. Her ability to bring suit within one year of this alleged TILA violation was not affected by the defendants' failure to provide the required documents at closing or by EMC's purportedly incomplete disclosures two years later."). In addition, with respect to Plaintiff's claim of rescission, equitable tolling cannot revive a stale rescission claim because of the three-year statute of repose under TILA. *Sampson*, 2011 WL 4584780 at *1 n.3 (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998)).

Accordingly, because the allegations of the Plaintiff's Complaint and First Amended Complaint establish that the Plaintiff's claims under TILA and Regulation Z are time-barred, and the Plaintiff has failed to allege any facts that would support any application of equitable tolling of the statute of limitations, the undersigned **RECOMMENDS** that the Motions to Dismiss [3][6][18][19] be **GRANTED** with respect to Plaintiff's claims under TIILA and Regulation Z, and that those claims be **DISMISSED** as to Defendants Vericrest, Trust, and Flagstar.

Because the Court is recommending dismissal of the TILA and Regulation Z claims on the basis that they are time-barred, it declines to address the Defendants' remaining arguments regarding Plaintiff's failure to state a claim for relief against them under TILA.

2.  RESPA

In Count III, Plaintiff asserts a claim under RESPA against Defendants Home America and Flagstar, and in Count IV, Plaintiff asserts a claim under RESPA against Defendants Vericrest and Trust. Plaintiff alleges that Defendants Home America and Flagstar violated 12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21 when they refused to respond adequately to the Plaintiff's Qualified Written Request ("QWR") within sixty

days, as required by RESPA. Plaintiff alleges that Defendants Vericrest and Trust violated 12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21 when they failed to acknowledge receipt of the Plaintiff's QWR within twenty days of receipt, and failed to respond adequately to the Plaintiff's questions in the QWR within sixty days of receipt.

Congress enacted RESPA in an effort to provide consumers with more information on the nature and costs of real estate transactions, and to prevent consumers from falling prey to abuses and unnecessarily high costs. *See McCarley v. KPMG Intern.*, 293 Fed. Appx. 719, 722 (11th Cir. 2008). RESPA provides that the persons or entities responsible for servicing a federally related mortgage loan must make certain disclosures, including disclosures of any assignment, sale, or transfer of the loan. 12 U.S.C. §§ 2605(a), (b). RESPA defines "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). The servicer of the loan may or may not be the same person or entity who originated the loan. *See* 12 U.S.C. § 2605(i)(2)

(defining servicer to "includ[e] the person who makes or holds a loan if such person also services the loan.").

RESPA requires, in relevant part, that a loan servicer respond to a QWR from a borrower that meets certain requirements:

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written

request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e);[5] *see also* 24 C.F.R. § 3500.21(e).

_____

[5] In July of 2010, the Dodd-Frank Act amended RESPA to shorten the time period under § 2605(e)(1)(A) from twenty days to five days, and to shorten the time period under § 2505(e)(2) from sixty days to thirty days. *See* Pub. L. 111-203, Title XIV, §§ 1400(c), 1463(c), July 21, 2010. Those amendments were not yet effective at the time period relevant in this action, however, and both parties appear to agree that the original time periods of twenty days and sixty days applied at all relevant

Thus, in order to state a claim for a violation of this section of RESPA, 12 U.S.C. § 2605(e), a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period of 20 days or 60 days, and (4) the plaintiff is entitled to actual or statutory damages. 12 U.S.C. § 2605; *see also Frazile v. EMC Mortg. Corp.*, 382 F. Appx. 833, 836 (11th Cir. 2010) (an allegation of damages is a necessary element of any claim under § 2605). A loan servicer who fails to respond to a qualified written request is liable for the failure, but a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. *See* 12 U.S.C. § 2605(f).

In this case, Plaintiff has asserted a claim under RESPA against all four Defendants, but in the Complaint, she alleges that only Flagstar and Vericrest were servicers of the Loan. In the Complaint, Plaintiff alleges that the servicing rights for the Loan were transferred to Flagstar effective May 1, 2005. Compl. at ¶ 13, Ex. C. She further alleges that, on November 30, 2010, Flagstar notified her that the service

---

times in this action. *See* Compl. [1] at ¶¶ 36, 38, 41, 42; 24 C.F.R. § 3500.21(e); *see also Patton v. Ocwen Loan Servicing, LLC*, No. 6:11-cv-445-Orl-19DAB, 2011 WL 3236026 at *4 (M. D. Fla. July 28, 2011) (Dodd-Frank amendments to RESPA take effect 18 months after "designated transfer date" of July 21, 2011 unless the regulations implementing RESPA are amended before that time).

of the Loan would be transferred to Vericrest, and that, as of the date of the Complaint, the Loan was being serviced by Vericrest. *Id.* at ¶ 16. Because Plaintiff has failed to allege that the Trust was a servicer of the Loan, the Plaintiff's RESPA claims must be dismissed as to the Trust.[6]

The undersigned finds that, with respect to both Vericrest and Flagstar, Plaintiff has alleged sufficient facts to assert a plausible claim that they were servicers of the Loan and that they were required to respond to a QWR as defined under RESPA. Plaintiff also alleges that she sent both Vericrest and Flagstar correspondence that she claims qualified as a QWR under RESPA. Upon review of the Plaintiff's factual allegations in the Complaint and the First Amended Complaint, including the QWR, the First Demand Letter, and the Second Demand Letter, the undersigned concludes that Plaintiff has failed to state a claim for relief under RESPA against either Vericrest or Flagstar.

First, the undersigned finds that Plaintiff has failed to allege sufficient facts to demonstrate that she sent correspondence to Flagstar and Vericrest that met the definition of a QWR under RESPA. A QWR must include requests for information

---

[6] In addition, Plaintiff also fails to allege sufficient facts to demonstrate that she ever sent the Trust a QWR or that the Trust failed to respond to the QWR as required under RESPA.

about the servicing of the loan, not complaints about the disclosures or nondisclosures made at the time of the closing. *See Marsh v. BAC Home Loans Servg.*, No. 2:09-cv-813-FtM-29DNF, 2011 WL 1196415 at *8 (M.D. Fla March 29, 2011) ("The Court has reviewed the notice sent by plaintiffs and agrees with BAC. Nothing in the notice indicates that there was a problem with the servicing of the loan (*e.g.*, the way BAC received plaintiffs' scheduled periodic payments due under the loan). All of the statements made in the notice that pertain directly to the loan are about the disclosures (or lack thereof) provided at closing, not the servicing.") (internal citations omitted); *Hintz v. JPMorgan Chase Bank, N.A.*, No. 10-2825, 2011 WL 579339 at *8 (D. Minn. Feb. 8, 2011) ("the letters were not QWRs because Plaintiffs did not identify purported errors in their account or ask questions related to Chase's servicing of their loan," and because "Plaintiffs' letters had no relation to Chase's receipt or application of their payments"); *Bray v. Bank of America*, No. 1:09-CV-075, 2011 WL 30307 at *12 (D.N.D. Jan. 5, 2011) (dismissing RESPA claim because "[t]he ongoing communications sent to the Defendants challenge the validity of the loan and accuse the Defendants of various statutory violations, but none of the communications relate to the servicing of the loan as that term is defined by statute").

As one court explained, it is not sufficient for a plaintiff to allege that a letter sent to a servicer merely requested information about the loan in general; the letter must request information specifically about the servicing of the loan in order to qualify as a QWR:

> The counterclaim alleges that on April 14, 1998, the Naeems, through counsel, sent a qualified written request to MorEquity for information relating to their loan, and that MorEquity failed to respond within 60 days as required by § 2605(e). None of the irregularities alleged in the counterclaim, however, relate in any way to the "servicing" of the loan, as that term is defined in the statute. The counterclaim alleges a forged deed, and irregularities with respect to the recording of the two loans, but makes no claim with respect to improper servicing. There are no claims, for example, that MorEquity did not give the Naeems credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the Naeem account balance. Therefore, the request did not relate to "servicing" of the loan, and Count V fails to state a claim under § 2605.

*MorEquity v. Naeem*, 118 F.Supp.2d 885, 901 (N.D. Ill. 2000).

In this case, Plaintiff alleges in the Complaint that, after a post-closing Loan Audit Analysis was conducted in January of 2011 revealing numerous violations of TILA, her counsel sent a First Demand Letter to Vericrest on or about March 3, 2011, which purported to advise Vericrest of the various TILA violations of the Loan and

requested a reduction in her mortgage payment. Compl., Ex. J. In the First Demand Letter, Plaintiff's counsel identified two errors with the Loan: that the loan failed to accurately disclose the amount financed, and that the loan failed to accurately disclose the total of payments. *Id.*, Ex. J. Plaintiff's counsel requested a reduction in the monthly mortgage payment and demanded that Vericrest respond within twenty days either to accept the proposed modification of the monthly payment or to deliver a counter-offer. *Id.*, Ex. J.

In the Second Demand Letter sent to Vericrest on March 30, 2011, Plaintiff's counsel does not identify any "errors" with the Loan, but states that the First Demand Letter was sent to Vericrest "detailing a suggested settlement of her claim" only after Vericrest failed to work with Plaintiff to find an "equitable solution." *Id.*, Ex. L. In the Second Demand Letter, Plaintiff's counsel further states that "Ms. Jones' last option is to simply rescind her loan based on the violations detailed in our original letter but, she would like to avoid doing so if at all possible." *Id.*, Ex. L.

The undersigned finds that Plaintiff has failed to allege sufficient facts to state a plausible claim that either the First Demand Letter or the Second Demand Letter qualified as a QWR under RESPA. Neither letter alleges any error in the servicing of the Loan, or requests further information about the servicing of the Loan. Only the

First Demand Letter includes any allegation that there were any errors regarding the Loan, and those errors were that the Loan failed to accurately disclose the amount financed, and the Loan failed to accurately disclose the total of payments. Both of those alleged errors concerned the origination of the Loan in 2005, not the servicing of the loan by Vericrest. *See, e.g., Frison v. WMC Mortg. Corp.*, No. 09cv1733-LAB (NLS), 2011 WL 4571753 at *4-5 (S.D. Cal. Sept. 30, 2011) (letter requesting loan modification package and loan origination documents is not a QWR under RESPA because it did not ask for information related to the servicing of the loan). Indeed, the First Demand Letter states on its face that the errors were found after a review of the original loan documents. Compl., Ex. J ("Based on our analysis of a Post-Closing Loan Audit Analysis ('Audit'), conducted from our client's original loan documents, we have discovered a number of deficiencies . . . .").

In addition, the QWR the Plaintiff sent to Flagstar also seeks documents covering a broad scope of information beyond that which could be reasonably construed to fall under the definition of the "servicing" of the Loan. *See* Compl., Ex. G. As discussed above, a QWR by definition relates solely to the servicing of the loan, not to issues related to the origination of the loan. *See Liggion v. Branch Banking and Trust*, Civil Action No. 1:11-cv-1133-WSD, 2011 WL 3759832 at *3 (N.D.Ga. Aug.

24, 2011) (Duffey, J.) ("Plaintiff's information document requests are not a proper qualified written request under RESPA because they do not relate to the servicing of the loan."); *see also Lawther v. Onewest Bank*, No. C10-0054RS, 2010 WL 4936797 at *6 (N.D. Cal. Nov. 30, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.") (internal citations omitted); *Jones v. PNC Bank, N.A.*, No. 10-cv-01077LHK, 2010 WL 3325615 at *2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR.").

Even if the Court were to assume that the QWR sent to Flagstar on or about September 11, 2010, constituted a QWR under RESPA, because at least some of the information requested by the Plaintiff related to the servicing of the Loan, the undersigned finds that Plaintiff has nevertheless failed to state a claim for relief against Flagstar because the allegations of the Complaint indicate that Flagstar did respond to the QWR by providing information about the Loan to Plaintiff. Plaintiff alleges in the Complaint that, on or about October 5, 2010, Flagstar sent her the QWR Response, but she contends that it failed to clarify or explain any of the errors described in the QWR. Compl., at ¶ 18, Ex. H. In the QWR Response, Flagstar responded to Plaintiff's QWR as follows:

> Please note the majority of your inquiry does not meet the criteria of a QWR as outlined in 12 U.S.C. 2605(e) and 24 CFR 3500.21(e), which states that a qualified written request involves questions about the servicing of a mortgage loan. Much of the documentation requested and issues raised in your letter far exceed a request for servicing information. Without the benefit of a discovery order, we are unwilling to respond to the remaining extensive list of questions contained in your recent letter.
>
> With regard to the servicing of the loan we have enclosed the following documents:
>
> 1. Mortgage
> 2. Note
> 3. Payment History

*Id.*, Ex. H.

Although Plaintiff alleges that Flagstar's QWR Response "failed to clarify or provide any explanation of the errors described in the QWR," Plaintiff fails to explain what "errors" were described in the QWR that would require clarification or explanation from Flagstar. Compl. at ¶ 18. The undersigned has reviewed the QWR and has not discovered any allegation of an "error" to which Flagstar was expected to provide a meaningful response. Nor has the undersigned found any "question" in the alleged QWR that would not be answered by the documents provided by Flagstar with the QWR Response.

In fact, after review, the QWR is more accurately described as a list of complaints about predatory lending practices in general and the disclosures that were

made, or not made, at the time of the closing of the Loan in 2005, and a request for various Loan documents, many of which do not relate to the servicing of the Loan by Flagstar. *See* Compl., Ex. G. "RESPA does not require a servicer to respond to any question that a borrower may ask–no matter how broad, vague, or far afield." *De Vary v. Countrywide Home Loans, Inc.*, 701 F.Supp. 2d 1096, 1106 (D. Minn. 2010).

Plaintiff also alleges that Flagstar's QWR Response was "insufficient to constitute an accurate response," but Plaintiff fails to explain how Flagstar's QWR Response was not an adequate response under RESPA. *See, e.g., Roller v. Litton Loan Servg.*, No. 10-13847, 2011 WL 2490597 (E.D. Mich. June 21, 2011).

> Plaintiffs, however, have not alleged how Litton failed to provide an adequate response to Plaintiffs' QWRs. In order to state a claim for relief under § 2605(e), Plaintiffs must allege more than conclusory statements that Litton failed to provide the information requested. *See Thomas v. Trott & Trott PC*, 2011 WL 576666 at *8 (E.D. Mich. 2011) (Zatkoff, J.); *Mekani v. Homecomings Financial, LLC,* 752 F.Supp.2d 785, 795 (Borman, J.); *Langley v. Chase Home Finance, LLC*, 2011 WL 1150772 (W.D. Mich. 2011). Plaintiffs have not alleged in any detail how the responses by Litton are insufficient, and as such, have failed to state a claim under § 2605(e). At a minimum, Plaintiffs have not pleaded the facts necessary, as required by *Twombly*, to plausibly suggest that Litton failed to adequately respond to Plaintiffs' QWRs.

*Roller*, 2011 WL 2490597 at *5.

Finally, even if the Plaintiff had alleged sufficient facts to demonstrate a plausible claim that Flagstar violated RESPA because it failed to adequately respond to the QWR, the Plaintiff has not included any factual allegations explaining how Flagstar's failure to provide an adequate response to the QWR caused her to suffer any damages. *See Habib v. Bank of America Corp.*, Civil Action No. 1:10-cv-04079-SCJ-RGV, 2011 WL 2580971 at *4 (N.D. Ga. March 15, 2011) (Vineyard, M.J.) ("Plaintiff's allegations fail to put Bank of America on notice as to how any purported RESPA violations harmed her."), *adopted by* Civil Action No. 1:10-cv-04079-TWT, 2011 WL 2580780 (N.D. Ga. June 29, 2011) (Thrash, J.); *Yates v. GMAC Mortg. LLC*, Civil Action No. 1:10-cv-2546-RWS, 2010 WL 5316550 at *4 (N.D. Ga. Dec. 17, 2010) (Story, J.) (dismissing RESPA claim with prejudice because plaintiff failed to "articulate any facts showing how Defendant's failure to respond or inadequate response to the RESPA requests resulted in any damages or the amount of such damages").

In the First Amended Complaint, Plaintiff alleges that she has incurred actual damages in an amount in excess of $180,000, which represents all of Plaintiff's payments as a result of the real estate transaction including, but not limited to, mortgage payments, finance charges, property taxes, condominium fees, and property

insurance payments. First Amend. Compl. [11] at ¶¶ 39, 45. Plaintiff makes only a conclusory allegation, however, that she suffered damages as a result of the Defendants' alleged violations of RESPA. She fails to provide any factual support explaining how Flagstar's alleged violation of RESPA in October of 2010 (or any other alleged violation of RESPA by Defendants) caused her to suffer damages in excess of $180,000, which apparently includes her mortgage payments on the Loan going back to 2005. *See, e.g., Phillips v. Bank of America Corp.*, No. 10-cv-04561EJD, 2011 WL 4844274 at *5 (N.D. Cal. Oct.11, 2011) (dismissing plaintiff's RESPA claim because plaintiff failed to allege facts showing "that it is plausible, rather than merely possible" that the claimed damages resulted from defendant's alleged violation of RESPA)*; Durland v. Fieldstone Mortgage Co.*, No. 10CV125, 2011 WL 805924 at *3 (S.D. Cal. Mar. 1, 2011) (mere allegations of damages, including fees assessed, negative credit reporting, and emotional distress, were insufficient to establish a causal link between the alleged RESPA violations and plaintiff's claimed damages); *Lawther v. Onewest Bank*, No. C10-0054RS, 2010 WL 4936797 at *7 (N.D. Cal. Nov. 30, 2010) (dismissing plaintiff's RESPA claim because it "remain[ed] unexplained . . . how the QWR failure itself is causally connected to the claimed distress of [plaintiff] or his family").

Accordingly, because the allegations in the Plaintiff's Complaint and First Amended Complaint establish that Plaintiff has failed to state a claim for relief under RESPA, the undersigned **RECOMMENDS** that the Motions to Dismiss [3][6][18][19] be **GRANTED** with respect to Plaintiff's claims under RESPA, and that those claims be **DISMISSED** as to Defendants Vericrest, Trust, and Flagstar.

### 3. O.C.G.A. § 7-1-1013

In Count V of the Complaint, Plaintiff has asserted one count against Defendants for a violation of O.C.G.A. § 7-1-1013, the Georgia Residential Mortgage Act ("GRMA"). Plaintiff alleges that Defendants violated the GRMA by misrepresenting material factors and conditions of the Loan. Compl. at ¶ 47. Specifically, Plaintiff alleges that the amount financed on the Truth in Lending Disclosure Statement is inconsistent with the Good Faith Estimate, that the total amount of payments were not accurately disclosed, and that Defendants have improperly refused to issue a rescission of the Loan. *Id.* at ¶¶ 47-49.

Plaintiff contends that the Defendants' material misrepresentations regarding the Loan violated the GRMA, which provides, in relevant part:

It shall be prohibited for any person transacting a mortgage business in or from this state, including any person required to be licensed or registered under this article and any person exempted from the licensing or registration requirements of this article under Code Section 7-1-1001, to:

(1) Misrepresent the material facts, make false statements or promises, or submit false statements or documents likely to influence, persuade, or induce an applicant for a mortgage loan, a mortgagee, or a mortgagor to take a mortgage loan, or, through agents or otherwise, pursue a course of misrepresentation by use of fraudulent or unauthorized documents or other means to the department or anyone;

(2) Misrepresent or conceal or cause another to misrepresent or conceal material factors, terms, or conditions of a transaction to which a mortgage lender or broker is a party, pertinent to an applicant or application for a mortgage loan or a mortgagor; . . . [or]

(6) Engage in any transaction, practice, or course of business which is not in good faith or fair dealing, or which operates a fraud upon any person, in connection with the attempted or actual making of, purchase of, transfer of, or sale of any mortgage loan . . . .

O.C.G.A. § 7-1-1013.

Defendants argue that the Plaintiff has failed to state a claim for relief under the GRMA because the GRMA does not provide a private right of action. *See Jordan v. PHH Mortg. Corp.*, Civil Action No. 1:10-cv-0967-TWT-CCH, 2010 WL 5058638 at *7 (N.D. Ga. Nov. 5, 2010), adopted by 2010 WL 5055809 (N.D. Ga. Dec. 6, 2010) (Thrash, J.) (*citing Reese v. Wachovia Bank, N.A.*, Civil Action No. 1:08-cv-3461-GET, 2009 U.S. Dist. LEXIS 94802, at *6-7 (N.D. Ga. 2009) (Tidwell,

J.) (no private cause of action was intended by the legislature to accrue under the GRMA)); *see also Kabir v. Statebridge Co., LLC*, Civil Action No. 1:11-cv-2747-WSD, 2011 WL 4500050 at *9 n.13 (N.D. Ga. September 27, 2011) (Duffey, J.) ("Courts within this district have also found that a private cause of action does not arise under the GRMA, which does not explicitly create a private action and which contains a robust public enforcement scheme.").

Even if the GRMA allowed for a private cause of action, however, the undersigned finds that Plaintiff has nevertheless failed to state a claim for relief under the GRMA against Flagstar, Vericrest, or the Trust. She alleges in the Complaint that "Defendants" violated the GRMA by misrepresenting material factors and conditions of the Loan; specifically she alleges that the amount financed on the Truth in Lending Disclosure Statement is inconsistent with the Good Faith Estimate, that the total amount of payments was not accurately disclosed, and that Defendants improperly refused to issue a rescission of the Loan. Compl. at ¶¶ 47-49. The allegations of the Complaint, however, do not allege that any Defendant other than Home America was involved in the origination of the Loan.

Plaintiff contends that she obtained the Loan from Home America on or about March 17, 2005, and that the servicing rights for the Loan were not transferred to

Flagstar until May 1, 2005. *Id.* at ¶¶ 12-13. She does not allege that Flagstar, Vericrest, or the Trust had any role in preparing the Truth in Lending Disclosure Statement, the Good Faith Estimate, or any of the other documents or disclosures that should have been provided to her in connection with the Loan. In addition, although Plaintiff alleges that "Defendants" improperly refused to issue a rescission of the Loan, as discussed herein, Plaintiff has failed to allege any facts sufficient to establish a plausible claim that rescission was a remedy that was available to her under TILA or any other statute.

Accordingly, because the GRMA provides no private cause of action, and because the allegations of the Complaint and First Amended Complaint establish that Plaintiff has otherwise failed to state a claim for relief under the GRMA against Defendants Flagstar, Vericrest, or the Trust, the undersigned **RECOMMENDS** that the Motions to Dismiss [3][6][18][19] be **GRANTED** with respect to Plaintiff's claim under O.C.G.A. § 7-1-1013, and that the claim be **DISMISSED** as to Defendants Vericrest, Trust, and Flagstar.

4.   Fraudulent Concealment

Finally, in a count asserted only in the First Amended Complaint, Plaintiff has asserted a claim against Defendants for fraudulent concealment (Count VII). As noted above, Plaintiff has failed to file any response to the Defendants' Motions to Dismiss the First Amended Complaint. Under the Local Rules of this Court, a failure to file a response to a motion indicates that the motion is unopposed. *See* LR 7.1(B), NDGa. Accordingly, the undersigned deems Plaintiff's lack of response as an abandonment of her claim of fraudulent concealment and it should be dismissed on that ground.

Furthermore, even if the Plaintiff had not abandoned her claim of fraudulent concealment, the undersigned finds that she has failed to allege sufficient facts to state a plausible claim. As discussed above, although Plaintiff alleges in the First Amended Complaint that Home America failed to provide her with a copy of the settlement documents at the closing, that allegation covers only the "concealment" part of her claim but not the "fraudulent." Plaintiff fails to allege sufficient facts that Home America, or any of the other Defendants, engaged in the "fraudulent concealment" of any material information that they were required to disclose.

Pursuant to Georgia law and Federal Rule of Civil Procedure 9, a plaintiff must plead a fraud claim with particularity. O.C.G.A. § 9-11-9; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The particularity rule alerts defendants of "the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotes omitted). The Eleventh Circuit has held that "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (*citing Fitch v. Radnor Industries, Ltd.*, No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Moreover, in a case involving multiple defendants, a plaintiff may not simply "lump together" all the defendants in the allegations of fraud; instead, the complaint must give each defendant reasonable notice of the nature of its alleged participation

in the fraud. *See Brooks*, 116 F.3d at 1381 (*citing Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988).

In this case, Plaintiff has failed to allege fraud with the particularity required by Rule 9(b). Specifically, she has failed to allege with particularity what each individual Defendant did, or did not do, that constituted fraudulent concealment. With respect to each Defendant, she fails to identify the precise statements or misrepresentations made, the time, place, or person responsible for the statement or material omission, the content and manner in which the statements or omissions misled her, or what each Defendant gained by the alleged fraud.

In the First Amended Complaint, Plaintiff alleges that, during the closing, Home America failed to provide Plaintiff with a copy of the settlement documents, including, but not limited to, the Truth in Lending Disclosure Statement and Good Faith Estimate. First Amend. Comp. at ¶ 12. She contends that, after she made repeated requests for the settlement documents, the documents were finally provided

to her on or about August 15, 2010. *Id.* Plaintiff further alleges that Home America's agent, Morris Hardwick and Schneider LLC, had another closing scheduled to take place immediately after the conclusion of the Plaintiff's closing, and that during Plaintiff's closing, "Defendant pressured Plaintiff to hurry through each of the flagged documents without sufficient time to examine the documents she subsequently endorsed." *Id.* at ¶ 12(a).

Thus, at most Plaintiff alleges that Home America merely failed to provide her with copies of the settlement documents, but she also alleges that she was aware at the time of the closing that Home America had failed to provide these documents to her, and she made "repeated requests" for the documents. Moreover, the Plaintiff has failed to connect Home America's alleged concealment of the settlement documents to Defendants Vericrest, the Trust, or Flagstar. Plaintiff has not alleged any facts in the First Amended Complaint that would support a plausible claim of fraudulent concealment against Vericrest, the Trust, or Flagstar.

Accordingly, because the Plaintiff has abandoned her claim of fraudulent concealment by failing to respond to the Motions to Dismiss the First Amended Complaint, and because the allegations of the Plaintiff's First Amended Complaint establish that Plaintiff has failed to state a claim for fraudulent concealment with

sufficient particularity, the undersigned **RECOMMENDS** that the Motions to Dismiss [3][6][18][19] be **GRANTED** with respect to Plaintiff's claim of fraudulent concealment, and that the claim be **DISMISSED** as to Defendants Vericrest, Trust, and Flagstar.

### D. Defendant Home America

Although Plaintiff has also named Home America as a Defendant in this action, the docket indicates that Home America has not entered any appearance as of this date.[7] In addition, the docket also reflects that Plaintiff has failed to file any proof of service upon Home America within the time period provided by the Federal Rules of Civil Procedure. Under Rule 4(m), a plaintiff must serve each defendant with a copy of the complaint and summons within 120 days of filing the complaint. Fed. R. Civ. P. 4(m). A plaintiff is also required to file proof of service with the Court by filing an affidavit of the process server. Fed. R. Civ. P. 4(l)(1). A failure to effect service within

---

[7] The undersigned notes that, in Flagstar's first Motion to Dismiss [6], it states that Home America filed a Chapter 11 Bankruptcy action in the U.S. Bankruptcy Court for the Middle District of Florida on or about August 24, 2009. *See* Flagstar Mot. to Dismiss [6] at 2 n.2. Thus, had the Plaintiff provided proof of service against Home America, all proceedings in this case would be automatically stayed with respect to Home America pursuant to 11 U.S.C. § 362(a). Plaintiff has not made any motion to the Court, however, in which she submits notice of Home America's bankruptcy action or requests that this action be stayed pending the outcome of Home America's bankruptcy action.

the 120-day time period will result in dismissal of the complaint without prejudice unless the plaintiff can show good cause why service was not made within that period. Fed. R. Civ. P. 4(m).

In this case, the Plaintiff filed the Complaint on July 15, 2011; thus, the time period for effecting service of the summons and complaint on the Defendants under Rule 4(m) expired on or about November 12, 2011. Because Plaintiff has failed to file any proof of timely service upon Defendant Home America, has failed to request any extension of time in which to do so, and has failed to show good cause for her failure to effect service, the undersigned **RECOMMENDS** that all of the claims asserted against Defendant Home America be **DISMISSED without prejudice**.

## III.    RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Motion to Dismiss [3] and the Motion to Dismiss Plaintiff's Amended Complaint [18] filed by Defendants LSF7 NPL V Trust and Vericrest Financial, Inc., be **GRANTED**, that the Motion to Dismiss [6] and Motion to Dismiss First Amended Complaint [19] filed by Defendant Flagstar Bank FSB, be **GRANTED**, and that all of the claims asserted in

the Complaint and the First Amended Complaint be **DISMISSED** as to Defendants Vericrest, Trust, and Flagstar.

**IT IS FURTHER RECOMMENDED** that the "First Amended Complaint" [14] filed by the Plaintiff on August 31, 2011, be **STRICKEN** from the record.

**IT IS FURTHER RECOMMENDED** that all of the claims asserted against Defendant Home America Mortgage, Inc. be **DISMISSED without prejudice**.

In the event that the District Court adopts all of these recommendations, this action should be **DISMISSED** in its entirety against all Defendants. As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

IT IS SO RECOMMENDED this 7th day of December, 2011.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE